UNITED STATES of America,
Appellee,

v.

**Albert William MESTETH, Appellant.**

No. 75–1376.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1975.

Decided Jan. 28, 1976.

Marvin D. Truhe, Rapid City, S. D., for appellant.

William F. Clayton, U. S. Atty., Rapid City, S. D., for appellee.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellant Albert William Mesteth, a twenty-two year old Indian, was convicted by a jury in the District of South Dakota for assault with intent to do bodily harm in violation of 18 U.S.C. § 1153 and S.D.C.L. (1967) § 22–18–11. The incident giving rise to the conviction was the stabbing of appellant's girl friend, Mona Montgomery, at a residence near Batesland, South Dakota, on the Pine

Ridge Indian Reservation, during the course of a party at which the appellant was intoxicated. Appellant assigns three points of error.[1] We affirm.

■ Appellant's first assignment of error is that the verdict, which required a finding beyond a reasonable doubt that appellant specifically intended to do bodily harm, was contrary to the evidence, which proved that appellant was too intoxicated to harbor specific intent.

The general rule governing appellate review of a verdict of guilty is that the evidence must be viewed in the light most favorable to the government and the verdict must be upheld if it is supported by substantial evidence. All reasonable inferences are to be resolved in favor of the verdict. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942) and *United States v. Madden*, 482 F.2d 850, 851 (8th Cir. 1973).

While agreeing that the evidence supports appellant's contention that he was intoxicated at the time of the incident, we find that the jury instructions on the defense of intoxication, to which no objection was made, were adequate, and further find that there was sufficient evidence from which the jury could infer appellant's specific intent to do bodily harm to Mona Montgomery. There was evidence of motive, such as Mona Montgomery's testimony that she had been attempting to ignore and avoid the appellant because of her disgust with his drunkenness, and Mrs. Geraldine Red Owl's testimony that appellant had confessed the incident to her in some detail, stating that he had promised Mona that he would "dust" her and that he had stabbed Mona after she refused to talk

with him. Cecelia Runnels, a relative of appellant, testified that appellant had also confessed the stabbing to her. We find that from this evidence a jury could infer that appellant was not too drunk to form and harbor a specific intent to physically injure Ms. Montgomery.

Appellant's second assignment of error is the refusal of the court to grant jury requests during deliberation to be read Mrs. Red Owl's testimony and to be told whether the appellant is left or right handed. Each request was made by the jury's sending from the jury room a note delivered by the marshal to the judge, and each was refused by the judge's writing "no" and his signature on the note and delivering it to the jury through the marshal.

■ The decision whether to accede to a jury request to have testimony read or reread is generally for the discretion of the trial court. *See, e. g., Stone v. United States*, 506 F.2d 561 (8th Cir. 1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975); *United States v. Mackin*, 163 U.S.App.D.C. 429, 502 F.2d 429, *cert. denied*, 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974); *Government of Canal Zone v. Scott*, 502 F.2d 566 (5th Cir. 1974); *United States v. DePalma*, 414 F.2d 394 (9th Cir. 1969), *cert. denied*, 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970). We are not persuaded that the circumstances in this case call for a deviation from the general rule and find no abuse of discretion in the court's refusal to have Mrs. Red Owl's testimony read.[2]

The evidence indicated that the victim was stabbed from behind on the left side of her neck. Appellant alleges that he is right handed and that some juror or jur-

1. Upon learning that the only grand jury testimony pertaining to his indictment was that of an FBI agent and was not transcribed, appellant abandoned his contention that he was wrongfully denied access to grand jury testimony.

2. We note appellee's contention that had the court granted the request to have Mrs. Red. Owl's testimony read, the appellant might have appealed on the basis that she was an

important prosecution witness whose testimony was given undue weight. *But see Stone v. United States, supra,* where this court upheld the reading of testimony of the sole prosecution witness on grounds that granting the reading request was a question of trial court discretion. *See also Gregory v. United States*, 365 F.2d 203 (8th Cir. 1966), *cert. denied*, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967).

ors might have concluded that the assailant was likely to be left handed. Thus he contends that he was prejudiced by the court's refusal to tell the jury whether he is left or right handed. For the trial court to have acceded to this request would have been a violation of the rule that a jury should consider only the evidence produced at trial. *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Any prejudice to the defendant from the jury's lack of knowledge as to his right or left handedness, a point on which no evidence was produced, was not a result of the judge's failure to accede to this jury request.

Appellant's last assignment of error is that the denials of the aforementioned requests were communications made outside the presence of the defendant and his counsel and constitute reversible error, as they violate the right of the accused to be present at every stage of the proceedings against him.[3]

■ It has long been recognized that " 'the orderly conduct of a trial by jury' " requires that parties be present " 'in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged . . . .' " *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975), quoting *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919).

■ This court has recognized that a presumption of prejudice arises from a court's instructing the jury outside the presence of the defendant, but that the presumption "in some instances may be overcome by evidence giving a clear indication of lack of prejudice." *Rice v. United States*, 356 F.2d 709, 717 (8th Cir. 1966). *See also United States v. Treatman*, 524 F.2d 320 (8th Cir. 1975) and *Jackson v. Hutto*, 508 F.2d 890 (8th Cir. 1975), and cases cited. Decisions applying Fed.R.Crim.P. 43 make clear the right of a defendant to have a jury's request answered in open court only after there has been opportunity to be heard, but a violation of Rule 43 may be harmless error. *See Rogers v. United States, supra*, 95 S.Ct. at 2095; *United States v. Reynolds*, 489 F.2d 4 (6th Cir. 1973); *United States v. Schor*, 418 F.2d 26 (2nd Cir. 1969). And the test for determining whether error is harmless is whether there exists " 'any reasonable possibility of prejudice.' " *United States v. Reynolds, supra*, at 8.

■ The jury communications in the instant case are not alleged to have had a coercive effect upon the jury, nor were they of an affirmative or substantive nature, such as the instructions delivered outside the presence of the defendant in *Evans v. United States*, 284 F.2d 393 (6th Cir. 1960). The trial court's only response was simply to refuse the requests. Thus there was no reasonable possibility of prejudice, and the error, if any, was harmless.[4]

■

---

**3.** Although counsel knew of the requests before the verdict was returned and failed to renew them or to ask the trial court to take timely affirmative action with regard to them, this court will notice the assignment of error despite the lack of timely objection if the error is of such dimension as to affect substantial rights of the defendant. Fed.R.Crim.P. 52(b).

**4.** Our position concerning the communication regarding the request to be told whether the defendant was left or right handed is consistent with that of the Sixth Circuit in *United States v. Reynolds, supra*, where it was held harmless error for the court to deny, outside the presence of the defendant and his counsel, a jury request to be told the defendant's height.