**UNITED STATES of America, Appellee,**

v.

**Manuel Alfonso RODRIGUEZ, and Raymond Geraldo, Defendants-Appellants.**

**Nos. 1013, 1014, Dockets 76–1589, 76–1590 and 76–1591.**

United States Court of Appeals, Second Circuit.

Argued April 4, 1977.

Decided May 11, 1977.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Atty. for the U. S. and James A. Moss, Lawrence B. Pedowitz, and Frederick T. Davis, Asst. U. S. Attys., New York City, of counsel, for appellee.

Charles Sutton, Atty., New York City, for appellant Rodriguez, and Gordon J. Lang, Atty., New York City, for defendant Geraldo, for defendants-appellants.

Before OAKES, Circuit Judge, HOLDEN, District Judge,* and WYZANSKI, Senior District Judge.**

---

* Chief District Judge for the District of Vermont.

** Senior District Judge for the District of Massachusetts, sitting by designation.

WYZANSKI, Senior District Judge:

Rodriguez and Geraldo appeal from judgments of conviction based on (1) Count 1 of an indictment charging them and others with violation of 18 U.S.C. § 371 by a conspiracy to file false documents with the United States Department of State and to violate the Gun Control Act of 1968, 26 U.S.C. §§ 5811, 5812, and 5861(d) and (e), and (2) Count 3 of the same indictment charging them and others with violation of 18 U.S.C. §§ 1001 and 2 by having made false representations in matters within the jurisdiction of the United States Department of State. Geraldo also appeals from judgments of conviction on Counts 2 and 4 which involve the same statutory sections as does Count 3.

Each defendant claims that (1) the indictment was legally insufficient, (2) the prosecutor misconducted himself, (3) the jury's verdicts were based upon insufficient and improperly admitted evidence, and (4) the District Judge's instructions were improper. Additionally, Rodriguez alleges that because of the incompetence of his trial attorney he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.

None of those claims is sound.

Count 1 of the indictment charged that appellants and others from January 1 to May 15, 1976 conspired to violate Title II of the Gun Control Act of 1968, 26 U.S.C. §§ 5811, 5812, 5861(d) and (e) and 18 U.S.C. §§ 1001 and 2, which relate to false statements made to and within the jurisdiction of federal governmental agencies. It alleged that the object of the conspiracy was secretly to sell weapons and ammunition to buyers in the United States in a manner intended to conceal from the Departments of State and Treasury the true identities of the buyers; that to attain their object the conspirators agreed to prepare and file with the State Department fraudulent documents to create the false appearance that certain weapons and ammunition were to be purchased by foreign countries for their exclusive use; that among the means defendants used were (a) "defendants prepar-

ed, facilitated the preparation of, and caused to be prepared certain false and fraudulent documents including: (i) an official . . . 'Application/License' . . . (ii) a certificate . . . bearing the signature of the defendant Colonel Manuel Alfonso Rodriguez; (iii) a copy of a purchase order for 10,000 submachine guns and 1.5 million rounds of ammunition . . . signed by Howard Peters as purchasing agent on behalf of San Pan Trading Corporation; and (iv) a United States Department of State, Office of Munitions Control, Form DSP-83 . . . signed by the defendant Manuel Alfonso Rodriguez and bearing his official government seal", and (b) "May 5, 1976, the defendants filed, facilitated the filing of, and caused to be filed with the United States Department of State the false and fraudulent documents referred to . . . above"; and that in furtherance of the conspiracy defendants committed 15 described overt acts.

In Counts 2, 3, and 4, appellants and others were charged, in addition to the conspiracy, with substantive crimes in violation of 18 U.S.C. §§ 1001 and 2.

Count 2 alleged that on May 5, 1976 they "in a matter within the jurisdiction of a department or agency of the United States, to wit, the United States Department of State . . . wilfully and knowingly did make, facilitate the making of, and cause to be made certain false, fictitious and fraudulent statements and representations on a United States Department of State Form DSP-5, entitled 'Application/License for Permanent Export of Unclassified Implements of War' . . . that 10,000 'Bushmaster' submachine guns . . . together with . . . ammunition . . . were to be exported to . . . El Salvador . . . whereas . . . defendants . . . knew that the said . . . guns . . . were to be sold to individuals in the United States."

Count 3 is also based on 18 U.S.C. §§ 1001 and 2. The gravamen of the charge is that in a matter within the jurisdiction of the State Department defendants "knowingly did make, facilitate the making of, and

cause to be made certain false . . . statements . . . on a certificate dated April 22, 1976 on the official letterhead of the 'Estado Mayor General De LaFuerza Armada, San Salvador, . . . C.A.', bearing the signature of the defendant Manuel Alfonso Rodriguez, that 10,000 'Bushmaster' submachine guns . . . were to be used by the armed forces of El Salvador . . . whereas . . . defendants . . . knew that the . . guns . . . were to be sold to individuals in the United States . . . ."

Count 4 is likewise based on 18 U.S.C. §§ 1001 and 2. Here the charge is that in a matter within the jurisdiction of the State Department, defendants "knowingly did make, facilitate the making of, and cause to be made certain false . . . representations on a purchase order, dated May 3, 1976, from San Pan Trading Corporation . . . to Mott Haven Industries, Ltd. . . . that 10,000 machine guns . . were to be exported to El Salvador . . whereas . . . defendants . . . knew that the . . . guns were to be sold to individuals in the United States . . . ."

■ Defendants' contention that the indictment is legally insufficient was not raised in the District Court. Hence it is barred by Rule 12(b)(2) of the Federal Rules of Criminal Procedure which provides that "objections based on defects in the indictment", except an objection that the indictment "fails to charge an offense", must be raised "prior to trial". *Davis v. United States,* 411 U.S. 233, 243, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *United States v. Campisi,* 306 F.2d 308, 311–312 (2nd Cir., 1962). Moreover, even if not barred, the contention would lack merit. Contrary to defendants' arguments, each count of the indictment specifies what was false about the cited document or documents submitted to the State Department; inasmuch as each count alleged that the false statement was submitted in a matter within the jurisdiction of a specified federal agency, that is the State Department, it was unnecessary for the indictment further to allege that the

false statements were "material and capable of influencing" the State Department, *United States v. Adler,* 380 F.2d 917, 920–22 (2nd Cir., 1967); and even though the word "facilitate" does not appear in the text of either § 1001 or § 1002 of 18 U.S.C. the use in the indictment of that verb in *conjunction* with, and not as an *alternate* to, other verbs directly quoted from the statute was mere harmless surplusage.

■ Defendants' claims of prosecutorial misconduct are not merely baseless, but reflect on their counsel rather than on the United States District Attorney or his assistants.

The record makes it plain to us that, despite the canards of appellants' counsel, at every stage of the case the Government took the position that it did not claim that defendant Rodriguez had personally signed the certificate referred to in Count 3. Thus the sharpest distinction is drawn in Count 1 between the certificate *"bearing the signature of* . . . Rodriguez" and the Form DSP–83 "Consignee Purchaser Transaction Statement" *"signed by* . . . Rodriguez", and the purchase order *"signed by Howard Peters"*. That distinction was obviously maintained in the text of Count 3 of the indictment as well as in the various oral statements of Government counsel to the District Court and the defense counsel. No reasonable person could doubt that the prosecution's consistent position was that Rodriguez's name on the certificate was there with his full knowledge and authorization, but not as a result of his penmanship. This was the nub of the difference between the certificate *"bearing the signature"* of Rodriguez, and the Form DSP–83 *"signed"* by him.

■ Appellants' attack upon the Government's closing argument to the jury is so frivolous that we shall not place in the reports what we regard as unwarranted criticism of a wholly unobjectionable and indeed admirably fair summation. We reject the appellants' argument that by indirection the United States District Attorney drew attention to defendants' failure to take the stand. The Fifth Amendment and

the statutes and cases which apply its teaching do not preclude a prosecutor from telling a jury that certain factual evidence, even if defendants have not conceded its correctness, is "uncontradicted". *United States v. Rodriguez*, 545 F.2d 829, 832 (2nd Cir., 1976), *United States v. Armedo-Sarmiento*, 545 F.2d 785, 793 (2nd Cir., 1976). Indeed, when considering what does constitute proof beyond a reasonable doubt, it is appropriate and perhaps inevitable for a jury or anyone else to examine not merely the solidity of the offered evidence but the fact that nothing in the record places the proffered evidence in doubt. Hence, the prosecutor has a right to show how strong is his case, even if it be true that it appears that a defendant's failure to take the stand or to offer evidence has left him facing a demonstration of Euclidean inevitability.

We have not overlooked, but need not comment extensively upon, other points raised on this appeal.

The United States District Attorney was justified in replying as he did in the District Court to the claim of defendants' trial counsel that the Government had used improper investigative techniques.

■ There is no merit to defendants' claims that the verdicts against them rest on insufficient, inadmissible, or constitutionally impermissible evidence.

■ We reject the argument of defendants' appeal attorneys that defendants' trial attorney failed to render his clients effective assistance of counsel. In any complicated case every lawyer, and we might add every judge, is likely to make both procedural and substantive errors, often reflecting mistakes of judgment under pressure. He is also apt to make minor errors of omission. But that is no reason to embrace the specious argument that a defendant has been prejudiced if his counsel fails to raise even meritless points in an effort to preclude a just conviction. Defendant's counsel has obligations to both the court and the client. As an advocate at the bar, he never ceases to be an officer of the court when serving as a lawyer for a litigant. Hence he has a duty not to be frivolous. Our study of this record as a whole satisfies us that defendants were adequately represented in the District Court.

Finally, we regard Judge Duffy's conduct of this case and his charge to the jury as worthy of commendation, not adverse criticism.

Judgments of conviction affirmed.